IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Appeal No. 03-3522 |
| Plaintiff, | ) | (On limited remand) |
| | ) | |
| v. | ) | |
| | ) | |
| NOE VASQUEZ, | ) | No. 01 CR 1094 |
| | ) | Judge Ruben Castillo |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On April 20, 2005, in appeal number 03-3522, the Seventh Circuit ordered a limited remand to this court for proceedings to determine whether this court would have imposed a different sentence in this case if required to re-sentence. This Court followed the procedure set out in United States v. Paladino, 401 F.3d 471 (7th Cir. 2005.) On May 3, 2005, this Court requested briefing on this issue from the parties. After careful evaluation of the parties' submissions, the Sentencing Transcript and the pre-sentence report, this Court has decided to hew to its original sentence for the reasons set forth herein.

## RELEVANT FACTS

On December 11, 2001, narcotics trafficker Earl Berry identified Defendant as one of his suppliers for cocaine, stating that Vasquez (whom he knew as "Hector") had sold him cocaine five or six times in the past, each time in quantities of two to three kilograms. On the day following Berry's arrest, December 12, 2001, Berry, while in federal custody, made a recorded phone call to Defendant in which he ordered five kilograms of cocaine. Berry had described to the agents how, when he had made prior purchases of multiple kilogram quantities of cocaine

from Defendant, he had picked it up at either Defendant's house or a garage on the same block. Defendant agreed to provide Berry with the cocaine, and the same day, December 12, 2001, in the company of FBI agents, Berry went to Defendant's residence for the purpose of picking up the cocaine. When Berry arrived, Defendant showed him into the garage, and agents arrested Defendant. They asked him where the drugs were, and he pointed to garbage bags which contained approximately seventy kilograms of marijuana. Pursuant to the execution of a search warrant on the house where Defendant was residing, agents also recovered 4.7 kilograms of cocaine from a non-working refrigerator in the basement area where the Defendant was staying. Also recovered in the residence was a handgun loaded with a magazine clip, approximately $13,000 in currency, and various drug paraphernalia.

Defendant was charged in a three count indictment. Count One charged a conspiracy to possess with the intent to distribute cocaine and marijuana; Count Two charged possession with intent to distribute cocaine; and Count Three charged possession with intent to distribute marijuana. Pursuant to a written plea agreement, Defendant pled guilty to Count Three.

*Sentencing*

On September 17, 2003, this Court found that the offense level under the sentencing guidelines was thirty-two and that no further adjustments were appropriate. Therefore, the guidelines range was 121 to 151 months. This range was based on the Court's determination that Defendant's relevant conduct included the cocaine charged in Count Two. Defendant, at the sentencing hearing, claimed that he had only spoken to Earl Berry one time (Sentencing Transcript, p. 17), and that he understood the transaction to be for the sale of marijuana, not cocaine. This Court rejected this claim on various bases. (Sentencing Transcript, p. 10-12).

-2-

Further, because Defendant refused to acknowledge responsibility for the cocaine, despite the Court's finding that the evidence of his possession of it had been proven not only by a preponderance of the evidence, but beyond a reasonable doubt (Sentencing Transcript, p. 10), this Court declined to credit Defendant with acceptance of responsibility. (Sentencing Transcript, p. 13). In sentencing Defendant to 121 months, this Court advised Defendant: "...I don't think this was the first time that you were involved in narcotics because someone doesn't start with this level of narcotics, either the marijuana or the cocaine, but I think this is the first time that you were caught...." (Sentencing Transcript, p. 23).

## ANALYSIS

The sentencing of criminal defendants in the federal system is ultimately governed by 18 U.S.C. § 3553(a). <u>United States v. Booker</u>, 125 S.Ct. 738 (2005). That subsection first requires that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2), which refers to "the need for the sentence imposed to:

> (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) afford adequate deterrence to criminal conduct;
>
> (C) protect the public from further crimes of the defendant; and
>
> (D) provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner."

After this general mandate, § 3553(a) lists seven factors for the court to consider "in determining the particular sentence to be imposed." In addition to the factors set forth at § 3553(a)(2) quoted above, the court is to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> ...
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentences and the sentencing range established [under the sentencing guidelines], subject to any amendments made to such guidelines by an act of Congress...;
>
> (5) any pertinent policy statement ... issued by the [United States] Sentencing Commission ... subject to any amendments made to such policy statement by an act of Congress...;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

Yet, within this statutory sentencing scheme the Sentencing Guidelines remain important because they represent eighteen years' worth of careful consideration of the proper sentence for federal offenses as recently acknowledged by our Court of Appeals. See United States v. Mykytiuk, No. 04-1196, __F.3d__, (7th Cir. July 7, 2005). In Mykytiuk, the Court of Appeals indicated that the Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country and, therefore, acknowledged that a sentence properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness. Id.

In this case, the Court imposed a guideline sentence based on the nature of the offense and Defendant's failure to accept responsibility for the full scope of his criminal conduct. The ease with which Defendant arranged the 4.7 kilogram cocaine transaction reflects that he was a

-4-

drug trafficker with good connections, as further evidenced by his admitted possession of seventy kilograms of marijuana. In his request for a new sentence, the principal argument made by Defendant is that he is entitled to a reduced sentence because, as an alien, he will be ineligible for placement in a half-way house. However, under the circumstances of this case Defendant's alien status is not a proper basis for a downward adjustment or variance from the advisory guideline sentence. It is also noteworthy that Defendant's sentence approximates the mandatory minimum ten year sentence for those persons who traffic in five kilograms or more of cocaine, even though his total relevant conduct includes significantly more drugs. See 21 U.S.C. § 841(b). For example, the mandatory minimum sentence for those persons who traffic in one hundred kilograms or more of marijuana is five years. See 21 U.S.C. § 841(B)(vii).

Yet, in this case, Defendant's guideline sentence was dictated primarily by his repeated and poorly advised failure to take responsibility for his full criminal conduct. This Court believes this behavior justified an appropriate emphasis on deterrence because Defendant's repeated misstatements to the Court did not indicate that rehabilitation efforts would be effective. All of the objective facts surrounding this case showed that Defendant was a significant and unrepentant drug trafficker who merited a guideline sentence. Any other sentence would create unwarranted sentencing disparities among defendants who traffic in similar quantities. Defendant's alien status and lack of significant prior criminal history were properly taken into consideration by the imposition of a low-end guideline sentence.

## CONCLUSION

For all the reasons indicated herein, this Court informs the Seventh Circuit Court of Appeals that its original sentence of 121 months is the appropriate and reasonable sentence under

the advisory guideline system now in effect. The Clerk of the Court is directed to transmit this order to the Seventh Circuit Court of Appeals.

ENTERED: /s/ Ruben Castillo
Judge Ruben Castillo
United States District Court

DATED: July 25, 2005